**UNITED STATES of America,**
**Plaintiff(s)**

v.

**TWO MITSUBISHI PICK–UP TRUCKS With VIN # MMBJNK7401D041604 and VIN # MMBJNK7401D044381, Defendant(s).**

**Civil No. 04–1333 (JAG).**

United States District Court,
D. Puerto Rico.

Oct. 24, 2005.

Isabel Munoz–Acosta, Miguel A. Fernandez–Torres, United States Attorney's Office, Torre Chardon, San Juan, PR, for Plaintiffs.

Peter John Porrata, Peter John Porrata Law Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On April 16, 2004, the United States of America (the "Government") filed this action for forfeiture *in rem* against two Mitsubishi pick-up trucks with Vehicle Identification Numbers ("VIN") MMBJNK7401D041604 and MMBJNK7401D044381 (Docket No. 1). On May 30, 2004, claimants Ramon Barreto and Juan Barreto ("claimants"), the owners of the defendant vehicles, answered the complaint and filed a counterclaim (Docket No. 7). On May 9, 2005, the Government moved for summary judgment in its favor, ordering the forfeiture of the defendant vehicles (Docket No. 28). On September 14, 2005, claimants filed their opposition (Docket Nos. 38–41). For the reasons discussed below, the Court **GRANTS** the Government's motion for summary judgment.

## FACTUAL BACKGROUND

On July 2, 2001, claimants attempted to import the two defendant vehicles to Puerto Rico from Spain. The U.S. Customs Service ("USCS") received the vehicles for entry into the United States. Soon thereafter, the USCS released the vehicles without examining them. On July 31, 2001, an import specialist from the USCS issued a notice for claimants to return the vehicles for inspection. On August 8, 2001, claimants returned the vehicles to the USCS for examination. On June 3, 2002, the USCS notified the claimants that the vehicles would be seized because they did not conform to U.S. Environmental Protection Agency ("EPA") and U.S. Department of Transportation ("DOT") requirements. The USCS also informed claimants that they could avoid the seizure by bringing the vehicles into compliance. The USCS afforded claimants with such an opportunity and granted them a series of extensions of time in which to do so. During this time, claimants unsuccessfully tried multiple times to contact the EPA and DOT in order to get information about bringing the vehicles into compliance.

On July 15, 2002, claimants and the USCS signed a constructive forfeiture agreement to provide them with additional time in which to bring the vehicles into compliance. Nevertheless, on June 5, 2003 and on July 15, 2003, the EPA and DOT respectively denied entry of the vehicles into the United States. Claimants then requested reconsideration of the EPA and DOT orders to no avail. On December 23, 2003, USCS agents arrived at claimants' home in order to seize the vehicles.

## DISCUSSION

### A. *Summary Judgment Standard*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any mate-

rial fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment." *Id.* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

B. *The Government's motion for summary judgment*

The USCS seized the defendant vehicles pursuant to 19 U.S.C. § 1595A(c)(2)(B), which provides that merchandise which is introduced or attempted to be introduced into the United States may be seized and forfeited if "its importation or entry requires a license, permit or other authorization of an agency of the United States Government and the merchandise is not accompanied by such license, permit, or authorization." The Government argues that the defendant vehicles required the authorization of both the EPA and DOT before they could be allowed to enter into the United States. Because both denied such authorization, the Court is being called upon to review the decisions of the two agencies.

Under the Administrative Procedure Act ("APA"), a Court reviewing an administrative agency's decision shall hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Airport Impact Relief, Inc. v. Wykle,* 192 F.3d 197, 202 (1st Cir.1999). The task of a Court reviewing agency action under the APA's "arbitrary and capricious" standard is "to determine whether the [agency] has *considered the relevant factors and articulated a rational connection* between the facts found and the choice made." *Dubois v. United States Dept. of Agriculture,* 102 F.3d 1273, 1284 (1st Cir.1996)(*quoting Bal-*

timore Gas & Elec. Co. v. Natural Resources Defense Council, Inc., 462 U.S. 87, 97, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983)) (emphasis ·in original); (see also Airport Impact Relief, Inc., 192 F.3d at 202; Penobscot Air Servs. Ltd. v. Federal Aviation Admin., 164 F.3d 713, 719 (1st Cir. 1999)). The Court must determine whether the agency based its decision on a consideration of the relevant factors and whether it made a clear error of judgment. Id. (citing Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 375, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)).

"While this is a highly deferential standard of review, it is not a rubber stamp." Dubois, 102 F.3d at 1285 (quoting Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n, 59 F.3d 284, 290 (1st Cir.1995)). Although "the ultimate standard of review is a narrow one," the Court must undertake a "thorough, probing, in-depth review" and a "searching and careful" inquiry into the record. Id. (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415–17, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). The Court may not set aside the agency's administrative decision, however, "simply because [it] is unhappy with the result reached." Id. at 1284.

■ In this case, EPA and DOT denied authorization for entry of the vehicles into the United States for their failure to comply with certain requirements. More specifically, the EPA denied entry of the vehicles because they lacked a label stating that they complied with the EPA's emission standards which is affixed by the manufacturer in accordance with 40 C.F.R. § 86.091–35. (See Docket No. 29, Exh. 5, p. 3). In the case of the DOT, the vehicles were denied entry because (1) their VINs did not comply with the requirements stated in 49 C.F.R. § 565; (2) they lacked a certification that they complied with U.S.

Federal Motor Vehicle Safety Standards in the form of a certification sticker placed on the driver's door post by the manufacturer; and (3) the manufacturer in Thailand does not appear to have registered with the National Highway Traffic Safety Administration as required by 49 C.F.R. §§ 551.45, 565, and 566. (See Docket No. 29, Exh. 6). These regulations were established in accordance with Congress' delegation to the agencies to regulate the areas of environmental protection and transportation safety and, thus, have the effect of law. See, e.g., Armstrong v. Ramos, 74 F.Supp.2d 142, 149 (D.P.R.1999)("Legislative regulations are issued by an agency pursuant to a statutory delegation and implement the statute; these regulations have the force and effect of law"). The implementation and enforcement of these regulations seems rather simple and straightforward; either the vehicles comply or they do not, with no room for interpretation. Because it clearly seems from the evidence on record that the answer is that they do not, and claimants have not even attempted to argue otherwise, the Court cannot find that the agencies' actions in this matter were capricious or arbitrary.

■ Claimants do argue, however, that the agencies' determinations were arbitrary and capricious because they were issued in violation of their due process rights, because the final notice denying release of the vehicles was deficient, and because the agencies' records do not provide a reasonable basis for their decisions.

First, "the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). "An essential principle of due process is

that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Id.* at 542, 105 S.Ct. 1487 (*quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). The "root requirement" is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)(emphasis in original).

The problem with claimants' allegation of due process violation is that they have failed to establish a cognizable property interest. Claimants have been on notice virtually since the vehicles arrived in Puerto Rico that these do not meet all the requirements set forth in existing DOT and EPA regulations for entry into the United States and that, therefore, the vehicles were subject to seizure and deportation. Accordingly, because the vehicles never received authorization for entry and were illegally in the United States, a cognizable property interest never materialized.[1] *See, e.g.,* 18 U.S.C. § 983(d)(4) ("[N]o person may assert an ownership interest under this subsection in contraband or other property that it is illegal to possess."); *U.S. v. Approximately 600 Sacks of Green Coffee Beans,* 381 F.Supp.2d 57 (D.P.R.2005)(Forfeiting coffee beans illegally imported into the United States).

Second, 19 C.F.R. § 162.31 establishes that a notice of forfeiture issued by the USCS shall inform any interested parties of their right to apply for relief under the Tariff Act of 1930 or any other applicable statute. Furthermore, the regulation requires that notice be given of

(1) The provisions of law alleged to have been violated;

(2) A description of the specific acts or omissions forming the basis of the alleged violations;

(3) If the Alleged violations involve the entry or attempted entry of merchandise,

(i) A description of the merchandise and the circumstances of its entry or attempted entry, and

(ii) The identity of each entry, if specific entries are involved

(4). . . .

*Id.* Claimants argue in a rather perfunctory manner that the notice given on August 15, 2003 does not conform to these requirements and was, thus, insufficient. The Court, however, disagrees.

Even if the final notice issued by the USCS did not contain all the required information, looking at the circumstances of this case the Court finds that claimants were on notice of the violations which led to the seizure. For over two years the claimants had known about the vehicles' deficiencies and were in constant communication with USCS agents while they tried to correct them. Thus, claimants cannot now allege that they did not have sufficient notice of the reasons why the vehicles were subject to seizure and forfeiture.

Finally, claimants argue that the Government has failed to proffer the full administrative record which the agencies considered in reaching their decisions. Accordingly, they argue that the Court is not in a position to evaluate whether the factual record supports the final agency determination. Under the specific circum-

---

1. The Court will, nevertheless, express its dissatisfaction with both the DOT and the EPA insofar as it took them an unreasonable term of two years to finally answer claimants' communications relating to the defendant vehicles.

stances of this case, however, the Court finds no need for a full administrative record or, as claimants suggest, the testimony of the agency official who took part in the decision. This case poses only a rather simple query of whether the vehicles comply or not with existing regulations; and from the record before the Court, which includes communications sent to both agencies, it seems that they do not. Moreover, the fact that claimants have not argued that the vehicles are in compliance further supports that conclusion.

Therefore, the Court cannot find that the agencies' actions were arbitrary and capricious. Accordingly, the Court must grant summary judgment in favor of the Government.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Government's motion for summary judgment. Judgment declaring the defendant vehicles forfeited to the United States shall enter accordingly.

IT IS SO ORDERED.